HELVERING, Commissioner of Internal Revenue, v. NORTHERN PACIFIC RY. CO.

Nos. 11312, 11313.

Circuit Court of Appeals, Eighth Circuit.

Aug. 1, 1939.

Morton K. Rothschild, Sp. Asst. to Atty. Gen. (Sewall Key, Sp. Asst. to Atty. Gen., on the brief), for petitioner.

M. L. Countryman, Jr., of St. Paul, Minn. (L. B. daPonte, of St. Paul, Minn., on the brief), for respondent.

Before GARDNER and WOODROUGH, Circuit Judges, and OTIS, District Judge.

OTIS, District Judge.

This opinion should be read in connection with the opinion of this court in Northern Pacific Railway Company v. Helvering, Commissioner, 8 Cir., 83 F.2d 508. The two cases—consolidated—considered in that opinion were remanded to the Board of Tax Appeals for further proceedings. Being heard again by the Board on the issue as to which they were remanded, the Board made a decision favorable to the Northern Pacific. Now the Commissioner has brought the two cases here a second time by his petition to review the Board's decision.

The cases involve the Northern Pacific's income taxes for the years 1926, 1927 and 1928. Having paid the taxes assessed for those years, the Company had made claims for refund. The basis of those claims was the Company's contention that it had understated in its returns the necessary maintenance and operating expenses for the years in question. It was claimed that the statement of expenses was too low for the reason that it was reduced by too large an amount on account of expense of transportation over the Northern Pacific's own lines of workmen on new construction and materials going into new construction. As the amount of this reduction was lessened, the greater became the amount of allowable deduction from

gross revenue, and the less the amount of income taxes due. The controversy which was presented to this court and which was determined in the opinion cited supra was whether the amount of transportation expense was to be calculated, as the company contended, by the so-called "out-of-pocket" method, i. e., by ascertaining the amount by which the railway's operating expenses were increased by the additional transportation of men and freight (as distinguished from determining the amount of transportation expense by applying to the men and freight transported average costs of transporting all men and all freight). It was held by this court that the "out-of-pocket" was the right method but that there had been no adequate opportunity for showing by that method what was the transportation expense for the years involved. That the parties might have that opportunity the cases were remanded to the Board.

The Board of Tax Appeals heard further testimony and ruled that the "out-of-pocket" cost of transporting men in the taxable years was one-half cent per man per mile (a ruling which is not now attacked) and that the "out-of-pocket" cost of transporting materials in the same years was, as to ballast materials, 4.146 mills per ton mile, and as to other construction materials, 2.208 mills per ton mile, or an average of 2.778 mills per ton mile for all materials transported. So calculating the transportation expense in question the Board ruled that the company had overpaid its income taxes for the years 1926, 1927 and 1928 in the respective amounts of $46,191.49, $61,899.44 and $20,935.79.

■ The Commissioner now contends—it is his only contention—that the evidence presented to the Board was too indefinite and uncertain to support its finding that 2.778 mills per ton mile was the average "out-of-pocket" cost of transporting materials for construction purposes. Learned counsel for the Commissioner frankly and rightly confessed at the oral argument that his task, that of showing that the finding of the Board was not supported by substantial competent evidence, was

difficult. In this instance, we believe, it was an impossible task.

■ Since the figure, 2.778 mills per ton mile, was presented by the Board only as an average of two other figures, namely, 4.146 mills per ton mile as the cost of transporting ballast materials, and 2.208 mills per ton mile as the cost of transporting other construction materials, the real question is, was there evidence to support the two underlying figures? And certainly there was such evidence unless the express and positive testimony of an expert witness offered by the company is rejected. This witness, F. C. Sharood, an accountant with thirty-nine years' experience in railroad and commercial cost accounting, assistant general auditor of the Northern Pacific undoubtedly qualified as an expert—his qualifications were not questioned—testified to the underlying figures (4.146 mills and 2.208 mills) and to the average, 2.778 mills. His testimony, as we have said, was express and positive. There was nothing indefinite, nothing uncertain about it. What learned counsel for the Commissioner really mean when they say that the evidence supporting the Board's finding was indefinite and uncertain is that Mr. Sharood's expert testimony was influenced by factors not themselves supported by the evidence. He applied formulae to the facts, which formulae were taken, not from the facts, but from authorities in railway accounting. In some instances he used certain averages, where, so he testified, that was the only way to approach accuracy. In short, he testified as an expert, giving his best judgment concerning matters as to which opinion evidence concededly was the only possible evidence, and drawing upon all his knowledge and study, as an expert is supposed to do and must do. The attack upon his testimony seems to us most strained and hypertechnical. At the very most it goes to the weight of the testimony and not to its competency. It was substantial, it was definite, and it fully supports the Board's finding.

The judgment of the Board of Tax Appeals should be and is affirmed.